**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

DAVID HANCOCK                                                                            PLAINTIFF

VS.                                                                   Civil Action No. 3:10-cv-687 HTW-LRA

WOODSON INCORPORATION                                                          DEFENDANT

## ORDER DENYING SUMMARY JUDGMENT

Before the court is defendant Woodson Incorporated's ("Woodson")[1] motion for summary judgment, filed pursuant to Fed. R. Civ. P. 56[2] [docket no. 20]. Plaintiff David Hancock ("Hancock") opposes the motion.

Plaintiff alleges that Woodson has violated the overtime compensation provision of the Fair Labor Standards Act of 1938 ("FLSA"), codified in Title 29 U.S.C. § 207. Plaintiff brings suit under the authorization of Title 29 U.S.C. § 216(b), which provides a private right of action to employees wronged in contravention of the FLSA. This court has subject matter jurisdiction over this dispute under federal question jurisdiction, Title 28 U.S.C. § 1331.[3] Having heard the arguments of the parties and fully considered the

---

[1] The style of this case is David Hancock v. Woodson Incorporation, but the defendant's name as it appears in the original state court complaint and the notice of removal is "Woodson Incorporated." Both the plaintiff and defendant have filed pleadings with a case style of "David Hancock v. Woodson Incorporated."

[2] Federal Rule of Civil Procedure 56(a) reads as follows:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

[3] Title 28 U.S.C. § 1331 provides: "The district courts shall have original jurisdiction of all civil cases arising under the Constitution, laws, or treaties of the United States."

parties' submissions and applicable law, this court denies defendant's motion for summary judgment. The court's reasoning is set out below.

## I.  Facts and Background

Woodson is a professional services company, which contracts with utility companies and government agencies to "mark[ ] and clear[ ] rights of way and assess[ ] and remove[ ]" danger trees[4] from utility easements. Fallon aff., ¶ 4, docket no. 20-1. Hancock worked for Woodson as a "utility forester" from July of 2008 through May of 2010. Fallon aff., ¶ 6. Woodson paid Hancock a salary of $65,000 per year for his work in that capacity. *Id* at ¶ 8.

Hancock claims that he was required to maintain time-sheets for his hours worked, including his overtime hours. He submitted these time sheets to Woodson, and alleges that Woodson used these time-sheets to bill its client, Entergy, for his overtime hours. Hancock says that while Entergy paid Woodson on a "cost plus" basis, Woodson did not pay him overtime for hours he worked in excess of forty-hours per week. Complaint, ¶ 5. Hancock has demanded pay for 833 hours of uncompensated overtime, equaling $39,059.37.

In 1988, Hancock obtained a Bachelor of Science degree in forestry from Mississippi State University, Starkville, Mississippi. Hancock depo. at 5:25-6:25. He is also licensed as a forester by the State of Mississippi. *Id*.

---

[4] Plaintiff described danger trees as "[t]hose trees that could possibly come into the conductors on the power lines due to height, due to proximity of the line, due to wind throw, ice breakage, or another tree could fall into those trees and force them into the line." Hancock depo. at 19:24 to 20:3.

The Mississippi Code defines a "forester" as someone who:

> by reason of his knowledge of the natural sciences, mathematics, economics and the principles of forestry, and by his demonstrated skills acquired through professional forestry education as set forth in Section 73-36-21, is qualified to engage in the practice of forestry and who also has been duly registered and holds a current valid license issued by the board.  Miss. Code Ann. § 73-36-3.

The record evidence of Hancock's job responsibilities includes Hancock's contract for employment; an affidavit from Jonathan Fallon, Hancock's supervisor at Woodson; Hancock's deposition; Hancock's affidavit; and business letters signed by Hancock during his employ at Woodson.

Hancock's employment contract provides:

1. Employee agrees to work for the Corporation as a Utility Forester in connection with vegetation surveys, utility right-of-way maintenance (vegetation services to include, initial clear, risk tree assessments and removals, re-clearing of existing right of ways and storm restoration) to be performed in Mississippi Louisiana, Texas, Alabama and Arkansas with respect to contracts between the Corporation and Entergy and other above ground and underground utilities which are now, and may be in the future, clients of the Corporation.

2. The duties of the Employee shall be such as are generally performed in right-of-way maintenance and such other duties as Corporation shall designate.  The Corporation specifically retains the right to designate and control the duties of the Employee.  In consideration of the employment contemplated herein, Corporation agrees to expend significant resources in training Employee for the services contemplated by this Agreement.

Hancock's supervisor, Jonathan Fallon, stated in his affidavit that Hancock's duties included:

> vegetation surveys, utility right-of-way maintenance, and vegetation services that could include initial clearing, risk tree assessment and removals, re-clearing of existing rights of way and storm restoration.

Fallon also stated in his deposition that Woodson had a good faith belief at all times during Hancock's employment that Hancock was exempt from the FLSA overtime requirements.

Woodson, citing portions of Hancock's deposition transcript, argues that since Hancock's description of his responsibilities and tasks while working at Woodson fit the definition of an exempt professional, as defined by federal law, he is not entitled to overtime pay.  In his deposition, Hancock described work which included title research to identify landowners of property; communication with the landowners regarding inspection of their property for "danger trees" which threatened a utility right of way; assessment of the trees themselves regarding whether they posed a risk to the utility lines; and documentation of his findings.  Hancock depo. At 18-23.  Hancock acknowledges that certain tasks, such as identifying "danger" trees, utilized his skill as a forester.  Hancock depo. at 20.  Finally, Woodson has provided letters signed by Hancock as a "Registered Forester" which Hancock sent to land owners regarding removal of trees.

In opposition to this motion, Hancock offers his own affidavit claiming that less than 35% of the work he did at Woodson required forestry knowledge.  Hancock aff. at 3, docket no. 24-1.  Hancock states that the bulk of his work at Woodson was manual labor, including: repair and maintenance of the shops and facilities, upkeep of the grounds, digging post holes and installing fences, planting vegetation, and spreading gravel.  *Id* at 1.  His deposition does not mention any of these activities, but primarily discusses his work assessing danger trees.

Hancock also reaffirms portions of his deposition, that his job description was vague, and that he lacked the authorization to make final decisions with respect to his work.  Hancock depo at 18:8, 22:22-25:5.

## II.  Legal Standard

### A.  Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

### B.  Fair Labor Standards Act

Plaintiff charges Woodson with violating his rights under the FLSA by forcing him to work overtime hours without paying him overtime compensation to which he was entitled.  The defendant replies that the FLSA requirement for overtime compensation does not apply to the plaintiff because he was a "professional" or "learned professional," exempt from the mandates of the FLSA.  The parties advance polar contentions; thus, this court turns to the relevant background and features of the Act.

Congress enacted the FLSA, under its Commerce Clause powers, with the purpose of protecting covered workers "from substandard wages and oppressive working hours, and 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 739, 101 S.Ct. 1437, 1444, 67 L.Ed.2d 641 (1981)(citing Title 29 U.S.C. § 202(a)).  Section

207(a)(1)[5] requires employers to pay overtime compensation for any hours worked by employees in excess of forty hours per week.  The FLSA offers exceptions, including an exemption of certain professionals from the overtime pay requirements.  These exemptions are "narrowly construed against the employer," who bears the burden to prove the employee is exempt from overtime pay.  *Paul v. Petroleum Equip. Tools Co.,* 708 F.2d 168, 170 (5th Cir. 1983).  The key, then, to determining if Woodson owes Hancock overtime compensation is whether Hancock, at the time of the dispute, met the definition of an exempt professional under the FLSA.

The FLSA lists categories of employees which are exempt from the overtime pay requirements.  Section 213(a)(1)[6] exempts "any employee employed in a bona fide executive, administrative, or professional capacity."  The statute itself does not set out the specific requirements of these exemptions, but delegates authority to interpret the FLSA and define its exemptions to the Secretary of the United States Department of Labor.  *Auer v. Robbins*, 519 U.S. 452, 456, 117 S.Ct. 905, 909, 137 L.Ed.2d 79 (1997).

---

[5] Title 29 U.S.C. § 207(a)(1) states:
(a) Employees engaged in interstate commerce; additional applicability to employees pursuant to subsequent amendatory provisions
   (1) Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

[6] Title 29 U.S.C. § 213(a)(1) states in part:
(a) Minimum wage and maximum hour requirements
The provisions of section 206 (except subsection (d) in the case of paragraph (1) of this subsection) and section 207 of this title shall not apply with respect to--
   (1) any employee employed in a bona fide executive, administrative, or professional capacity (including any employee employed in the capacity of academic administrative personnel or teacher in elementary or secondary schools), or in the capacity of outside salesman [. . .].

The Department of Labor regulations define each exemption and provide tests to guide their application.

Before 2004, courts applied either a "long" test or a "short" test to determine if an employee is exempt from FLSA overtime requirements, based on whether the employee met certain minimum salary requirements.  *See Owsley v. San Antonio Ind. School Dist.*, 187 F.3d 521 (5th Cir. 1999)(applying the "short" test);  *Paul,* 708 F.2d at 170 (discussing the "long" test versus the "streamline" test).  In April of 2004, the Department of Labor issued new regulations governing the FLSA which streamlined the test for professional exemptions, "adopting a single standard duties test."  69 Fed. Reg. 22122-01, 22148 (final rule issued April 23, 2004)(effective August 23,2004).

The regulations provide a two-part test, which includes the "salary test" and the "primary duties test," to evaluate if a worker is a "professional employee" under the FLSA.  *Stell v. Engineering & Fire Investigations, Inc.*, 2007 WL 1295838, *2 (S.D.Tex). Section 541.300(a) sets out this test:

> (a) The term "employee employed in a bona fide professional capacity" [. . .] shall mean any employee:
>
> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week (or $380 per week, if employed in American Samoa by employers other than the Federal Government), exclusive of board, lodging, or other facilities; and
>
> (2) Whose primary duty is the performance of work:
>
> (i) Requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction; or
>
> (ii) Requiring invention, imagination, originality or talent in a recognized field of artistic or creative endeavor.  Title 29 C.F.R. § 541.300.

The "salary test," in Section 541.300(a)(1), provides a threshold inquiry requiring that an exempt professional must be paid "compensation on a salary or fee basis at a rate of not less than $455 per week" to qualify as a professional.

The second part of the test, the "primary duties test," is further defined as it applies to the subcategory of "learned professional" in Section 541.301. *Stell,* 2007 WL 1295838, *2. Section 541.301 articulates three elements of the "primary duties test" for the "learned professional:

> (a) To qualify for the learned professional exemption, an employee's primary duty must be the performance of work requiring advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction. This primary duty test includes three elements:
>
> (1)  The employee must perform work requiring advanced knowledge;
>
> (2) The advanced knowledge must be in a field of science or learning; and
>
> (3) The advanced knowledge must be customarily acquired by a prolonged course of specialized intellectual instruction. Title 29 C.F.R. § 541.301(a).

The regulation defines "work requiring advanced knowledge" as "work which is predominantly intellectual in character, and which includes work requiring the consistent exercise of discretion and judgment, as distinguished from performance of routine mental, manual, mechanical or physical work." Title 29 U.S.C. § 541.301(b).

### III.  Analysis

#### A.  Test for an Exempt Employee

1. <u>Salary Test</u>

Both parties agree that Hancock has met the salary test. The test mandates compensation on a salary basis of more than $455 per week. Title 29 C.F.R. § 541.300(a). Hancock was paid "at a rate of $65,000 per year," considerably more

8

than the amount required under the salary test. Woodson, Inc. Contract for Employment, ¶ 3, docket no. 24-2. Further, in his response to Woodson's motion for summary judgment, the plaintiff does not challenge whether he satisfied the salary test. His brief focuses on his contention that he does not fulfill the "primary duties test." Plaintiff's response in opposition at 3, docket no 24.

2. Primary Duties Test

The Department of Labor regulations provide guidance as to how to evaluate the three elements of the primary duties test, saying:

> Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee. Title 29 C.F.R. § 541.700(a).

The regulations specifically address "amount of time spent performing exempt work" as a factor used to determine if an employee is exempt. If an employee spends more than 50% of his time doing exempt work, that employee "will generally satisfy the primary duty requirement." Title 29 C.F.R. § 541.700(b). Time is not the only test, and someone who spends less than 50% of his time performing exempt work may be an exempt employee. *Id.*

Although allocation of time is not determinative, Hancock said in his affidavit that "less than 35% of [his] work required advanced forestry knowledge." Hancock aff. at 3, docket no. 24-1. Hancock claims that the majority of his work involved manual labor, "including repair and maintenance to buildings and grounds upkeep." *Id* at 1. The

9

dispute regarding Hancock's allocation of time to exempt-type duties weighs against a grant of summary judgment.

Next, Hancock has provided evidence that he was limited in his ability to exert his own judgment. The following excerpt from his deposition indicates that he was not free to exercise discretion and required supervisor approval to make final decisions.

Q: When you were dealing with the landlowner like that and they either wanted to be paid or, like you said, well, look you've got your crew in here anyway, so why don't you get these scrubs or whatever, did you have the ultimate authority to make that decision?
A: No, sir.
Q: Who made that decision?
A: I did the field assessment. I assigned the volume of the tree, the product class of the tree. I had to get approval from–number one, in some instances, if we were working for Entergy, they had a vegetation coordinator that you had to turn things in to. [. . .] But all my information, all my documentation had to be turned in. I didn't make any of those final decisions. Hancock depo. at 22:19 - 23:15.

A: I had to run–everything that I did, I had to turn it in to supervisors.
Q  And who was your supervisor?
A: Jonathan Fallon, F-a-l-l-o-n, or Steve Woodson. I would turn some of it in–depended on–Sam Johnson, and then I guess the head contractor for them was Jeff Caubble, C-a-u-b-b-l-e. I would turn all my documentation in to them. For instance, Sam was over the new line installation or moving of lines and urban tree appraisal in town-type work. Jeff was over the rural assessments. I would send everything to Jeff. I got all my orders from Jonathan Fallon, unless Jonathan was out. Then Steve would call and let me know what had to be done. Hancock depo. at 24:17 - 25:5.

Further, in Hancock's employment contract, Woodson explicitly retains control and direction over Hancock's duties. Woodson, Inc. Contract for Employment, ¶ 2, docket no. 24-2.

Hancock's job title provides little insight into the scope of his work, allocation of his time, or his authority to use his own discretion and judgment–an explicit characteristic of work which requires "advanced knowledge." *See* Title 29 U.S.C. § 541.301(b). Woodson hired Hancock as a "utility forester," but that term is not

specifically defined in his employment contract. Further, the contract ambiguously specifies that his duties "shall be such as are generally performed in right-of-way maintenance and such other duties as **Corporation shall designate**."

Woodson argues that the salary of $65,000 agreed to in Hancock's employment contract indicates that Hancock was being paid at the level of a professional. The record, however, contains no evidence to compare this amount to salaries of other professionals in the industry or to those working at Woodson at the time.

Finally, the determination of whether Hancock employed advanced knowledge in a field of science or learning, which is customarily acquired by a prolonged course of specialized intellectual instruction, is fact intensive. To support its claim that Hancock's work met these requirements of advanced knowledge, Woodson points to Hancock's education and forestry license. Hancock says in his deposition that he is licensed as a forester and has a Bachelors of Science in forestry, which involves "a lot of math and science, a lot of natural resources, a lot of soil science." Hancock depo. at 6-8.

Without more specific evidence as to the exact nature of Hancock's education and the extent to which he applied it in his job at Woodson, this court cannot as a matter of law determine that he satisfies the test for the learned professional exemption from FLSA's overtime pay requirement.

**B. Hancock's Affidavit - does it create issue of material fact?**

Woodson argues that Hancock's affidavit stating he only spent 35% of his time at work engaged in activities which required his professional training should be stricken, because it contradicts his earlier sworn deposition testimony. In *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489 (5th Cir. 1996), the court addressed whether a company

11

president's affidavit which contradicted his prior deposition created an issue of material fact sufficient to deny summary judgment. The lawsuit centered around a contract dispute, and promises made by the parties. The president of the plaintiff company said in his deposition that the defendant's representative had promised to pay for certain work if another contractor involved in the project *did not finalize and sign a contract* with the plaintiff. *Id* at 496. Eighteen months later, the same company president filed an affidavit with the court saying the defendant's representative had promised to pay if the other contractor *did not pay*. *Id*. The court found his affidavit to be a contradictory re-characterization of the same conversation described in the deposition, and disregarded the affidavit. The court affirmed a grant of summary judgment stating, "[i]t is well settled that this court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony." *Id* at 465.

The facts of *S.W.S. Erectors* can be distinguished from this case because the statements in question in *S.W.S. Erectors* dealt with specific contractual promises which triggered duties to pay the other party. The changes in the company president's statements significantly changed the defendant's duties related to a financial guaranty.

Hancock in his deposition answered general questions about his job responsibilities as a forester. The questions were focused on his training and work, but did not require the level of specificity necessary to form a verbal agreement between two parties. Defendant correctly argues that Hancock did not say in his deposition that 65% of his time at Woodson was spent doing manual labor. And in his affidavit, Hancock does not deny he did the type of work he described in his deposition. The defendant, however, never asked Hancock how he allocated his time. This court, then,

will consider the affidavit, as it does not directly contradict Hancock's deposition.

### IV.  Motion to Strike Plaintiff's Designation of Experts.

Plaintiff has designated two treating physicians, E. Greg Wood, III, and David C. Collipp, from NewSouth Neurospine, as expert witnesses.  The designation merely lists the physicians names and addresses without any discussion of what opinion the experts intend to offer.  Woodson asks the court either to strike plaintiff's experts or require the plaintiff to provide full and complete expert reports as required by Fed. R. Civ. P. 26 and Uniform Local Rule 26.

The plaintiff has conceded this motion, stating he does not plan to call physicians as expert witnesses.

### V.  Conclusion

The court finds that a material issue of fact remains as to whether Hancock's work and job responsibilities qualify him as an exempt professional under the FLSA.  This finding is supported, not just by plaintiff's affidavit, but also by his deposition and employment contract.

Hancock's deposition does not conclusively support a finding that his work at Woodson fits an exemption under the FLSA.  The plaintiff describes activities that weigh in favor of finding exempt status, such as researching land titles,  working with landowners, and assessing which trees needed removal.  Hancock's deposition, however, also contains statements weighing against such a finding, such as his lack of decision-making authority and reliance on the discretion and judgment of supervisors to complete his work.

Finally, Hancock's affidavit, describes manual labor he performed while at Woodson.  And, although time allocation on non-exempt activities is not dispositive, his statement that "[l]ess than 35% of my work required advanced forestry knowledge" weighs against a grant of summary judgment.

The defendant carries the burden to prove that the plaintiff falls within a professional exemption from the FLSA overtime pay requirement.  The court finds that, while the plaintiff has training as a forester, and has used that training in his job,  a material question of fact exists as to the extent the plaintiff needed and utilized advanced knowledge in his job. The defendant, therefore has not satisfied its burden. This court denies defendant's motion for summary judgment [docket no. 20].

Plaintiff has conceded defendant's motion to strike plaintiff's designation of experts [docket no. 13].

**SO ORDERED**, this, the 12th day of March,  2012.

                                  **s/ HENRY T. WINGATE**
                                  **UNITED STATES DISTRICT JUDGE**

Order Denying Summary Judgment
Civil Action No. 3:10-cv-687 HTW-LRA